[Civ. No. 6490. Third Dist.—April 18, 1941.]

NORMAN A. EGILBERT, as Administrator, etc., Respondent, v. RUBY JEWELL HALL, as Administratrix, et al., Appellants.

306

Preston & Gibson and Harry W. Falk, Jr., for Appellants.

Walter S. Brann and Edgar H. Rowe for Respondent.

TUTTLE, J.—Plaintiff brought this action to recover upon a promissory note, executed by defendants, and reading as follows:

"Know All Men By These Presents

That we, the undersigned, Ruby J. Codding, Ida Jewell D'Egilbert, George Jewell, and Grace B. Hood, owners or parties in interest of the Hood ranch and personal properties in Batchelor Valley, Lake County, California, are legally indebted to William D'Egilbert of San Juan, Puerto Rico, in the sum of two thousand, one hundred and forty-six dollars and 35/100 cents for loans or advances made in the interest of the preservation of the said property, as per agreement of the parties hereto. That various sums, to-wit: $50.00 in 1930; $723.45 in 1931; $785.00 in 1933; $50.00 in 1934—or a total sum of $1608.45 have been advanced and with interest calculated annually, and not compounded at the rate of six percent per annum, in the sum of $537.90 has accrued as of this date; and

Further that we the undersigned owners or heirs in said Batchelor Valley ranch do hereby agree to pay the said sum of two thousand one hundred and forty-six dollars and 35/100 cents, when the said ranch is divided, or becomes the prop-

erty of the heirs of the late George Hood or whenever the said heirs in majority vote decide.

Furthermore, that the said indebtedness will continue to carry an interest charge of six percent per annum as and from the first day of June, 1935, up to which date interest on the present indebtedness is calculated. And,

Furthermore, any sums hereafter advanced for the benefits of the said property shall bear the same rate of interest and be subjected to the same procedure as is intended to be followed in the case of the previous advances herein acknowledged.

Given under our hands and seals the day and year hereafter written—the thirteenth day of April, nineteen hundred and thirty-five—at Witters Springs, Batchelor Valley, California.

> RUBY J. CODDING
> RUBY J. CODDING
> GRACE B. HOOD
> GRACE B. HOOD
> IDA JEWELL D'EGILBERT
> IDA JEWELL D'EGILBERT
> ————————G. B. JEWELL.''

Findings were made and judgment was entered against appellants for the principal sum mentioned above, with interest as provided in said note. The appeal is from the judgment.

Appellants contend that the finding to the effect that the note was not paid lacks evidentiary support. Respondent relies upon the presumption stated as follows in 19 Cal. Jur., pages 1046, 1047, paragraph 180:

'' . . . the burden of proof is upon the defendant to prove his affirmative allegation of payment; and possession by the plaintiff of the instrument itself, bearing no indorsement or other evidence of payment, raises a presumption that the instrument is wholly unpaid. This presumption, in the absence of proof of other facts reasonably warranting an inference of payment, prevails, and, in fact, may outweigh positive testimony in reference to payment.

The burden of proving payment resting on defendant, he must introduce evidence which warrants the conclusion, not only of the mere delivery of money to the creditor, but also of the delivery of money on account of the particular

obligation in suit, for this is involved in the term 'payment' when applied to any particular obligation.''

Appellants point to certain testimony relating to prior financial transactions between the payee of the note and the makers, from which they insist the court could draw but one conclusion—that the note was paid. We have examined the record in this respect, and hold that the facts come squarely within the ruling in the case of *Bank of Italy etc. Assn.* v. *Bettencourt,* 214 Cal. 571 [7 Pac. (2d) 174]. There it was held that the presumption of nonpayment was not overcome by the evidence adduced by appellants. The court said:

''If evidence be produced tending to warrant an inference of payment, an issue of fact is presented to be decided by the court or jury. (*Light* v. *Stevens,* 159 Cal. 288 [113 Pac. 659].) The court in the instant case, in the absence of sufficient rebuttal evidence to overthrow the presumption of nonpayment of said notes, held that said payments made in the manner described in the evidence could not be applied to the chattel mortgage notes in this action. The question being one of disputed fact, this court cannot disturb the finding.''

And so here, the question as to whether or not certain of the transactions mentioned were actually intended as payment of the note was one for the trial court, the burden of proof being upon the appellants. We are satisfied that the record presents merely a conflict, with the presumption on one side, and the testimony mentioned on the other. This being true, the finding cannot be disturbed by this court.

It is next contended by appellants that they were mere guarantors, and that there was no consideration received by them for the note. They point out that the uncontradicted evidence is to the effect that the money received upon the note all went to their co-signer, Grace Hood, and that none was received by them. There is evidence, however, through recitals in the note, that the loans and advances which are included therein were made in the interest of the preservation of certain real property in which appellants had an interest. This was sufficient consideration. As stated in section 1605 of the Civil Code:

''Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the

time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise.''

Furthermore, section 1963, Code of Civil Procedure, subdivisions 21 and 39, respectively, provide as follows:

''21. That a promissory note or bill of exchange was given or indorsed for a sufficient consideration;''

''39. That there was a good and sufficient consideration for a written contract;''

It is next contended by appellants that the evidence fails to show that the note was due. The obligation was to be due upon the happening of all or any one of three contingencies: 1. When their Batchelor Valley Hood Ranch was divided; 2. When it became the property of the heirs of the late George Hood; 3. When the heirs in majority vote decided it was due.

We are of the opinion that the second contingency had happened prior to the filing of the complaint. The trial judge aptly and correctly disposes of this contention in the following language appearing in his Order for Findings:

''It is readily apparent that the children of Grace B. Hood by a former marriage are not the heirs at law of George Hood, the step-father. The note, however, does not employ the terms 'heirs at law'. It recites: 'We . . . do hereby agree to pay . . . when the said ranch is divided, *or becomes the property of the heirs* of the late George Hood or whenever *the said heirs* in majority vote decide.' The common concept of the term 'heir'—as distinguished from its legal definition —is far more broad and inclusive and is 'frequently used to indicate those who come in any manner to the ownership of any property by reason of the death of the owner'. (*Home Acc. Ins. Co.* v. *Berges,* 30 Fed. (2d) 759, citing 29 C. J. 292.) Webster's International Dictionary defines the term 'heir' as 'One who inherits, or is entitled to succeed to the possession of, any property after the death of its owner; one on whom the law bestows the title or property of another at the death of the latter.' It will be readily perceived that the first portion of the definition is in accord with the use of the word used by those unfamiliar with its legal limitations. The question therefore arises in what manner did the parties to the note employ the term 'heirs', for in the intent and meaning with which they used the word must rest the proper construction of the instrument. (Civil Code, Sections 1647,

1649; C. C. P., Section 1865.) As heretofore several times stated at the time the note was signed the signers were the owners, subject to a life estate, of a portion of 'the Hood ranch', formerly owned by George Hood, and were, within the common usage of the term, heirs of George Hood. That the parties so used the word 'heirs' in the note in question becomes more readily apparent upon a further examination of its provisions. The third alternative condition precedent to payment reads, 'or whenever the said heirs in majority vote decide'. Obviously the parties agreed and understood that in the event neither of the other conditions precedent occurred that the note should be payable when the promisors therein so determined by majority vote. There is not the slightest reason to believe that it was the intent of the parties that strangers to the instrument—the heirs of George Hood (if any there be)—should determine by majority vote when the promissory note should be payable. Nor is there any testimony indicating that there were 'heirs' of George Hood other than the parties herein mentioned. That—regardless of the technical implication of the term—they regarded themselves as 'heirs' and so designated themselves, is clearly evident from the instrument itself considered in conjunction with all of the surrounding circumstances heretofore noted. It follows that plaintiff is properly entitled to judgment by reason of the occurrence according to the understanding of the parties of the second condition precedent to payment as specified in the note.

It might be added that in the event the court is in error in its views hereinabove expressed concerning the second condition precedent and that the condition has not occurred then by reason of its very indefiniteness the note would nevertheless constitute a valid evidence of indebtedness between the parties thereto. In such case mere indefiniteness as to the time of payment would not, could not, and ought not defeat the obligation for equity will decree payment upon the lapse of a reasonable time from and after the execution and delivery thereof. That a court must so conclude upon the facts as presented herein is supported by an abundance of authority. (*Weaver* v. *Greenbaum*, 31 Cal. App. (2d) 42, p. 51 [87 Pac. (2d) 406], and cases cited.)''

■ Finally, it is contended by appellants that the court erred in computing the amount due. It is claimed that the

trial court failed to credit appellants with certain payments, and that interest was erroneously computed. This objection was not presented to the trial judge. We cannot say, from the statement of appellants, that there was no evidence to sustain the finding with reference to the amount due. Furthermore, as stated in 2 California Jurisprudence, page 248, section 74:

"It is a well settled rule that a party cannot urge, for the first time on appeal, objections which could have been obviated if made in the court below. This doctrine is founded partly upon a sort of estoppel, for where the objection is one which could, if made in the court below, have been obviated, it would be clearly unjust for a party to withhold his objection until upon appeal, when it is too late to correct the defect."

The judgment is affirmed.

Pullen, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied May 17, 1941, and appellants' petition for a hearing by the Supreme Court was denied June 16, 1941.